UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------x

PETROS BABI,                              :

                    Petitioner,      :      **REPORT & RECOMMENDATION**

          -against-                  :      06 Civ. 14204 (CM)(MHD)

DARWIN LACLAIR,                            :

                    Respondent.      :
----------------------------------x

**TO THE HONORABLE COLLEEN MCMAHON, U.S.D.J.:**

Petitioner Petros Babi[1] seeks a writ of habeas corpus,
pursuant to 28 U.S.C. § 2254, to challenge his conviction on a
guilty plea to a charge of Criminal Sale of a Controlled Substance
in the First-Degree (N.Y. Penal Law § 220.43). Following that plea,
the court sentenced Babi to a prison term of seventeen and one-half
years to life. He is currently serving that and other sentences.

Babi claims that his guilty plea was coerced because at the
time of his indictment on the drug charge, the prosecutor also
filed charges against his sister and his mother, who was seriously
ill, and conditioned the dropping of those charges on his
willingness to plead guilty. (Habeas Pet. at 7). In opposition,

---

[1] Petitioner is also known as Petros Bedi or Petri Bedi.
See, e.g., People v. Bedi, 18 A.D.3d 568, 794 N.Y.S.2d 652 (2d
Dep't 2005).

1

respondent argues that the claim is procedurally barred from review and that, in any event, it is meritless. (Resp't Mem. 16).

For the reasons that follow, we recommend that the writ be denied and Babi's petition dismissed.

## PRIOR PROCEEDINGS

### A. The Guilty Plea and Sentence

The events that led to the plea targeted by Babi's petition began while he was incarcerated at Rikers Island, awaiting a trial on a Queens County indictment charging him with second-degree murder, a charge for which he was convicted at trial and sentenced in May 2000 to a twenty-five-year-to-life term. As recounted by New York County Supreme Court Justice William A. Wetzel, Jr., in 1998 the Office of the Special Narcotics Prosecutor opened an investigation into whether Babi was using a prison phone to call his mother and sister and, through their home phone, contacting others overseas to arrange for the importation of heroin into New York City. (Decision and Order dated July 10, 2006, People v. Babi, Ind. 5514/00 ("July 10, 2006 Order") at 2).[2]

---

[2] The cited decision by Justice Wetzel denied a section 440.10 motion by Babi to vacate his narcotics conviction.

2

Through the use of wiretaps, the investigators determined that Babi was indeed calling the mother's home phone and that his mother and sister would then connect him -- through the three-way calling feature on their phone -- to individuals in New York, Albania, Pakistan, Greece, and Peru. (Id. at 2). The substance of those wiretapped phone calls led to the return of a New York County indictment charging petitioner with Criminal Sale of a Controlled Substance in the First-Degree, Attempted Criminal Possession of a Controlled Substance in the Second-Degree and three counts of Conspiracy in the Second-Degree. In addition, the grand jury charged Babi's mother and sister with two counts of Criminal Facilitation in the Second-Degree. (Id.).

Apart from these discussions of narcotics transactions, the wiretaps picked up conversations between Babi and an individual from Peru who was seeking Babi's assistance in hiring someone to go to Mexico to kill an individual in aid of the Peruvian's cocaine business. This series of calls triggered a separate indictment by a Queens grand jury, charging petitioner with Conspiracy in the Second-Degree. (Id. at 3).

Justice Wetzel recounts that the prosecutor met with Babi and his attorney in August 2000 to review the forty-five wiretapped conversations. Petitioner then met separately with his lawyer, and,

3

after negotiations, accepted a plea agreement. (<u>Id.</u>). Under its terms petitioner was to plead guilty to the top count in the New York County indictment -- Criminal Sale of a Controlled Substance in the First-Degree -- and to the second-degree conspiracy charge in the Queen indictment. The agreement also specified that Babi would be sentenced to concurrent terms of seventeen and one-half years to life and twelve and one-half years to twenty-five years, respectively, on the New York and Queens charges, and that these terms would run consecutively to his twenty-five-year-to-life term on the murder conviction. (<u>Id.</u>). Finally, it was agreed that Babi would allocute to the fact that the assistance he had received from his mother and sister had been provided at his request, and that once he had made that representation, the charges against these two would be dropped. (<u>Id.</u> at 3-4).

On September 7, 2000 Babi entered a guilty plea in New York State  Supreme Court, Queens County, on the pending second-degree conspiracy charge. (Decl. of Ass't Att'y General Michelle Maerov, executed Apr. 26, 2007 ("Maerov Decl."), Ex. F, 440.10 Mot. Ex. 1 at ¶ 2). In the course of that plea he represented that his mother and sister had acted solely at his request in connecting him to designated phone numbers and that they were not involved in his narcotics activities. (<u>Id.</u> at ¶ 7). On the following day, his mother and sister were released from custody at Rikers Island,

4

where they had been held, and the charges against them were dismissed on September 28, 2000. (Maerov Decl., Ex. F, 440.10 Mot. Ex. 2 at 5).

As for the narcotics indictment, on September 18, 2000 Babi appeared before Justice Herbert Alderberg in the Special Narcotics Court, New York County, with his attorney and signed a written plea agreement embodying the terms previously agreed to with the State. (New York Plea Hr'g Tr. 2). As part of the written agreement, Babi "knowingly and voluntarily" relinquished his right to appeal his conviction and sentence. He also acknowledged that by pleading guilty he was giving up his right to a jury trial, his right to confront the prosecution's witnesses and to call his own witnesses, and his right to have the prosecution prove his guilt beyond a reasonable doubt. (Maerov Decl., Ex. A at 6-7). The plea agreement further required that Babi discuss the terms of the agreement and the waiver of rights with his attorney and acknowledge that he understood and accepted those terms and that he had entered into the agreement without coercion or pressure. (Id.). The agreement also recited that if Babi had gone to trial and been found guilty of all counts in the indictment, he could have been sentenced to a minimum of sixty-two and one-half years, consecutive to his sentence for second-degree murder and any sentence imposed for his Queens County conspiracy charge. (Id. at 5-6).

5

The agreement also specified that Babi was "required to state under oath a complete factual allocution of [the] crime" and the roles of the other people involved, including his mother and sister. (Id. at 3). As noted, the plea agreement also memorialized the prosecutor's agreement that he would dismiss the charges brought against Babi's mother and sister in exchange for Babi's allocution under oath that they had acted at his specific request, and that he took full responsibility for their actions. (Id. at 4).

The signed plea agreement was incorporated into the record, and the judge confirmed Babi's understanding that he was surrendering a variety of his constitutional rights, including his right to a trial. (New York County Plea Hr'g Tr. 3-4). The prosecutor then conducted the allocution of Babi's role in the criminal activity. (Id. at 5). In response to questions that required an answer of "yes," "no," or "I don't know," Babi admitted that he had had meetings and telephone conversations with a person residing in New York City with the intent to complete a sale of half a kilogram of heroin between approximately August 27, 1999 and October 18, 1999, and that he had subsequently arranged for the purchaser to wire money to a party residing in Pakistan in exchange for the heroin. (Id. at 5-6). He also acknowledged that he had been capable of securing the agreed upon amount of heroin. (Id. at 10). After briefly conferring with his attorney off the record, he also

6

answered "yes" when asked whether his mother and his sister had assisted him in arranging the telephone calls and whether they knew the purpose of those calls. Babi stated, however, that he did not know whether they had stayed on the phone and listened to the conversations once the connection was made. (Id. at 11-12).

On September 28, 2000 Babi appeared before Justice Alderberg for sentencing. He did not make any application concerning his plea, and he declined an express invitation to speak before he was sentenced. The court then sentenced him to the agreed-upon term of seventeen and one-half years to life. (New York Sentencing Hr'g Tr. 2).

On November 13, 2000 Babi appeared before Justice Joseph A. Grosso in Queens County Supreme Court for sentencing on the conspiracy conviction. (Maerov Decl., Ex. F, 440.10 Mot. Ex. 2). At that time, he moved to vacate his conviction, stating that his plea had been coerced, apparently because it was imposed as a condition for vacating the charges against his mother and sister. (Id. at 3). The trial court denied the application and sentenced him, in accordance with the plea agreement, to a term of twelve and one-half to twenty-five years, to run concurrently to his New York County narcotics sentence. (Id. at 7).

7

B.    The Appeals

Babi first appealed from his Queens conspiracy conviction to the Appellate Division, Second Department, contending that his plea had been coerced and that the trial court had not made an adequate inquiry before denying his motion to withdraw his plea. The Appellate Division rejected both arguments and affirmed the conviction. People v. Bedi, 303 A.D.2d 687, 757 N.Y.S.2d 570, 570-71 (2d Dep't 2003).

In September 2003, Babi appealed his New York County narcotics conviction to the First Department, claiming principally that his guilty plea had been coerced. (Maerov Decl., Ex. B at 7). He first argued that he had been subjected to undue pressure to accept the plea both because of the detention of his mother, who was suffering from health problems, and because of the impatience of the judge at his allocution. (Id. at 8). He further asserted that the court had been obligated to, but in fact had not explored with him at the plea hearing whether all of the elements of the crime to which he had pled were substantiated by evidence. (Id.). As a separate matter, Babi argued that the sentence of seventeen and one-half years to life was excessive, and that he had only agreed to the sentence because of coercion. (Id. at 14).

8

The State responded that Babi had not preserved his challenge to the voluntariness of his plea because he had not, as required by N.Y. Crim. Proc. Law § 440.10, first moved in the trial court to vacate the plea. (Id. at 10-11). The prosecutor then proceeded to argue that defendant had knowingly and voluntarily entered the plea and that he had waived all rights to appeal his conviction in the plea agreement. (Id. at 11, 21). The State also argued that it was within the trial court's discretion to truncate the allocution, both in regard to the description of the offense conduct and with respect to the defendant's understanding of his waiver of rights. (Id. at 13). The State also observed that the voluntariness of Babi's plea was bolstered by the fact that he had received a significantly shorter sentence than he potentially would have faced if he had been convicted at trial of all the charged counts, receiving seventeen and one-half years to life rather than fifty years to life. (Id. at 16, 20).

The Appellate Division affirmed the conviction and sentence. In doing so the court first held that Babi's challenge to the voluntariness of the plea was unpreserved since he had not moved in the trial court to withdraw the plea or vacate the judgment, and the court also declined to review that claim "in the interest of justice." People v. Babi, 7 A.D.3d 468, 468, 776 N.Y.S.2d 807, 807 (1st Dep't 2004). The panel then went on, however, to note a

9

recognized exception to the preservation requirement -- if a
"defendant's factual recitation ... negate[s] an essential element
of the crime pleaded to, or cast[s] significant doubt upon his
guilt, or otherwise call[s] into question the voluntariness of his
plea." Id. at 468, 776 N.Y.S.2d at 807 (citing People v. Toxey, 86
N.Y.2d 725, 631 N.Y.S.2d 119 (1995); People v. Lopez, 71 N.Y.2d
662, 529 N.Y.S.2d 465 (1988)). In such circumstances, if the trial
court accepts the plea without further inquiry, a defendant may
challenge the plea allocution on direct appeal not withstanding his
failure to move to withdraw the plea. See, e.g., Lopez, 71 N.Y.2d
at 666, 529 N.Y.S.2d at 467.


     The Babi court then proceeded to assess whether this exception
applied in this case, concluding that it did not. To reach this
conclusion, it first observed that Babi's factual recitation at his
allocution had not negated any essential element of the crime to
which he pled, as he had acknowledged that he had had the intent
and ability to complete the drug sale. The panel then noted that
"[t]he record establishes that the plea was knowing, intelligent
and voluntary." Babi, 7 A.D.3d at 468, 776 N.Y.S.2d at 807. On the
question of voluntariness, the panel concluded that insofar as the
plea agreement conditioned the release of Babi's mother and sister
on his entering a plea, it "met constitutional standards for that
type of arrangement." Id. at 468, 776 N.Y.S.2d at 807.

Finally, the court addressed the sentencing claim, holding that it had been waived by virtue of Babi's plea agreement. Alternatively, the court observed that there was "no basis for reducing the sentence or directing that it be served concurrently with defendant's Queens County [murder] sentence." Id. at 468, 776 N.Y.S.2d at 807.

Petitioner next moved for leave to appeal to the New York State Court of Appeals. That Court denied his application on August 23, 2004. People v. Babi, 3 N.Y.3d 670, 784 N.Y.S.2d 8 (2004).

## C.  Babi's Motion to Vacate

On October 17, 2005, Babi filed a motion, under N.Y. Crim. Proc. Law § 440.10, to vacate the judgment. He again argued that his guilty plea had been coerced by virtue of the fact that he had agreed to his plea in order to see the charges against his mother and sister dismissed. In explaining his procedural default, he said that he had not objected to his plea or moved to withdraw it until his sentencing hearing in Queens because he did not want to risk that the prosecutor would keep his mother incarcerated. (Maerov Decl., Ex. F, Aff. in Supp. of 440.10 Mot. at ¶ 17).

11

According to Babi, "the prosecutor arrested his mother and sister ... to hold them hostage under conditions of unlawful imprisonment with the threat of malicious prosecution in order to use their life and freedom as means of coercing defendant to comply with an unlawful plea agreement." (Id. at ¶ 17). He alleged that the prosecutor was aware of his mother's serious medical condition -- which some years before had resulted in the removal of her stomach and her spleen -- because it was discussed frequently in the phone calls being recorded, and that the prosecutor had had her arrested without any evidence that she had remained on the phone during the narcotics conversations or that she had understood that any conversations that she might have heard related to the sale of drugs. (Id. at ¶¶ 24-31). As for Babi's statement during his plea allocution that his mother and sister had known the purpose of the calls, he asserted that he had made that representation only because his attorney had told him off the record, immediately preceding his answer, that he had to make such a statement in order for the plea to be accepted and to secure the release of his mother and sister. (Id. at ¶¶ 33-40).

Babi claimed that he had not moved to vacate his plea before filing an appeal based on the advice of his appellate lawyer. (Id. at ¶ 61, Ex. 7). According to petitioner, she had advised him that because he had notified the court at the Queens County sentencing

12

hearing that he wished to withdraw his plea, and because the Queens County plea was negotiated as a package deal with the New York County plea, Babi's application to withdraw his plea at the Queens sentencing hearing was sufficient to preserve his claim of involuntariness. (Id.).

Finally, Babi argued that the taped phone conversations had taken place ten months before his arrest, and that the prosecutor had not produced any evidence that the negotiated sale had ever occurred. Babi argued that this indicated that he had lacked the capacity to complete the sale, and that therefore the court should not have accepted the plea to a charge of criminal sale. (Maerov Decl., Ex. F, Mem. of Law in Support of Mot. to Vacate at 32). He also alleged prosecutorial misconduct in the presentation of evidence to the grand jury. (Maerov Decl., Ex. F, Aff. in Supp. of 440.10 Mot. at ¶¶ 25-31).

The State opposed Babi's motion to vacate. In doing so, it argued that the motion was procedurally barred because the voluntariness of his plea had been raised on his appeal, and rejected on the merits. (Maerov Decl., Ex. H at 5). Alternatively, the prosecutor argued that the motion should be denied on the merits. First, the State noted that Babi had failed to secure an affidavit from his trial attorney supporting his allegations that

13

the plea was coerced. (Id. at 5, 20). Second, it reiterated that Babi had not challenged the plea at the New York County sentencing hearing, despite the fact that his mother was by then no longer incarcerated. (Id. at 13). Further, there was no evidence in the record that either Babi or his mother had sought to have her released from incarceration by any means other than as a condition to Babi's plea even though she could have negotiated a plea without incarceration or sought the dismissal of the charge against her due to her medical condition. (Id. at 14-15). As for her health, the prosecutor pointed out that all of the submitted medical records were from seven years preceding, or two years following, her incarceration and that there was no direct proof that she was severely ill during the time of incarceration, other than the testimony of Peter Zoumas, a family friend who is not a medical professional. (Id. at 16-17).

Finally, the State briefly addressed Babi's argument about the sufficiency of the evidence against his mother (and himself). It noted that such arguments were not appropriate given the procedural posture of the case (id. at 21), and that issues of evidentiary sufficiency were waived when Babi decided to enter a plea. (Id.).

In further support of its opposition to the motion, the State proffered an affirmation by Assistant District Attorney Richard B.

14

Schaeffer, the prosecutor who had negotiated the plea agreement and conducted Babi's allocution.[3] He offered evidence that Babi's mother had known the content of the phone calls, that she had stayed on the line during those calls and that the sale Babi had arranged had resulted in both payment and the shipment of the heroin, which was destined for an address in the Bronx.[4] (Maerov Decl., Ex. I at 4, 9-10). Mr. Schaeffer also stated that he had provided the transcripts of forty-five recorded conversations, and all of the evidence presented to the grand jury, to Babi and his attorney when the plea was being negotiated. (Id.). Finally, Mr. Schaeffer cited the finding of the New York State justice presiding over Stamata Babi's bail hearing, to the effect that the affidavit of Mr. Zoumas, the family friend who had visited her at Rikers Island and had witnessed the condition of her health (Maerov Decl., Ex. F, 440.10 Mot. Ex. 6) was "utterly incredible as a matter of law." (Id. at 13-14).

In his reply, Babi asserted that the Appellate Division had declined to review the merits of his involuntary-plea claim. (Maerov Decl., Ex. J at ¶¶ 4-7). His counsel also argued that the

_____

[3] Mr. Schaeffer was employed by the Queens County District Attorney but was cross-designated as an Assistant District Attorney for the Office of the Special Narcotics Prosecutor, allowing him to appear before the New York State Supreme Court, New York County. (Maerov Decl., Ex. I at 1-2).

[4] The heroin was seized en route to the United States by authorities in Karachi, Pakistan. (Maerov Decl., Ex. I at 7).

State could not assert that Babi's claim was barred on appeal, and then argue that his motion to vacate, made to remedy the failure to preserve his claim, was also barred. (Maerov Decl., Ex. G, Russo Aff. at 2). Babi also submitted an affirmation by Joseph Giannini, Esq., the attorney who had represented him during both the Queens County and the New York County pleas. (Maerov Decl., Ex. G, Giannini Aff.). Mr. Giannini stated that Babi had accepted the plea agreement only "because the People assured him that his sister and mother would be released and the charges against them would be dismissed. Thus the Defendant's plea wasn't voluntary. The plea was a product of coercion." (Id. at 2-3).

The trial court denied Babi's motion. (July 10, 2006 Order). The court first determined that petitioner's claim was barred on two grounds. It noted that the Appellate Division had ruled on both procedural and substantive grounds, first finding that Babi's challenge to the voluntariness of his plea was unpreserved and then ruling, on the merits, that the plea was voluntary. (Id. at 5). Thus, under both N.Y. Crim. Proc. Law §§ 440.10(2)(a) and 440.10(3)(a), Babi's attack on his plea was barred. The court then found, in the alternative, that Babi's motion was meritless. In so holding the court observed that there was no evidence that the prosecutor had exercised any coercion, and that in fact the plea had benefitted Babi. The judge also noted that there was no

16

evidence that Babi or his mother had pursued other available means of having her released from custody. (Id. at 6).

Babi sought leave to appeal the Supreme Court's denial of his motion to vacate. The Appellate Division denied that application. (Maerov Decl., Ex. N)

D.   Babi's Federal Habeas Corpus Petition

On October 31, 2006 Babi filed a timely petition pursuant to 28 U.S.C. § 2254 seeking a writ of habeas corpus. His only claim is that he was coerced by the prosecution into agreeing to the guilty plea. (Habeas Pet. 2).

Respondent of course opposes. In doing so he first argues that Babi's claim is procedurally barred from habeas review because the state court's determination that his motion to vacate was procedurally barred was an adequate and independent state law grounds for dismissal. (Resp. Opp'n 10). Respondent also argues that Babi's claim is meritless because his plea was knowing and voluntary.

In his reply Babi asserts that his motion to vacate was a proper assertion of his coerced-plea claim. (Reply in Supp. of

17

Habeas Pet. ("Pet. Reply") ¶ 10). He also argues that the denial of his motion to vacate was not based on any procedural default by him. (Id. at ¶ 26).

Babi goes on to argue that he is innocent of the charge to which he pled guilty, claiming he did not sell drugs, but rather was an agent for the purchaser. (Id. at ¶¶ 43, 83). He argues that the money did not go to his family, as the prosecution claimed, but instead to a third party and that the sale was never completed. (Id. at ¶¶ 86-87). He asserts that these are viable defenses that would have been heard at trial but for the prosecutor's coercion. (Id. at ¶ 87).

As for the coercion question, Babi asserts, as he did in his motion to vacate, that his plea was involuntary. (Id. at ¶¶ 57-75). He argues that because he properly presented evidence in his motion to vacate, the state court was obligated to hold a hearing to consider the new evidence and evaluate the case on the merits. (Id. at ¶ 36).

## ANALYSIS

Since respondent asserts that petitioner's claim is procedurally barred, we first address that issue and then turn to

the merits. For the reasons that follow, we conclude that the claim is not barred from habeas review but is meritless.

## A. Babi's Petition is Not Barred from Habeas Review

A habeas court ordinarily may not review a federal claim that was rejected by the highest state court to consider it if the state court's rejection rested on a "state law ground that is independent of the federal question and adequate to support the judgment." Coleman v. Thompson, 501 U.S. 722, 729 (1991); see also Jimenez v. Walker, 458 F.3d 130, 136 (2d Cir. 2006) (quoting Harris v. Reed, 489 U.S. 255, 260 (1989)). To be "adequate," the state procedural requirement must be "'firmly established and regularly followed by the state in question' in the specific circumstances presented in the instant case." Murden v. Artuz, 497 F.3d 178, 192 (2d Cir. 2007) (quoting Monroe v. Kuhlman, 433 F.3d 236, 241 (2d Cir. 2006)); see James v. Kentucky, 466 U.S. 341, 348-49 (1984); Cotto v. Herbert, 331 F.3d 217, 239 (2d Cir. 2003) (quoting Garcia v. Lewis, 188 F.3d 71, 77 (2d Cir. 1999)). As for the requirement of independence, the holding must rest on state law that is not "interwoven with federal law." Jimenez, 458 F.3d at 137 (quoting Michigan v. Long, 463 U.S. 1032, 1040-41 (1983)). Since it can be "'difficult to determine if the state law discussion is truly an independent basis for decision or merely a passing reference,' ...

19

reliance on state law must be 'clear from the face of the opinion.'" Fama v. Comm'r of Corr. Servs., 235 F.3d 804, 809 (2d Cir. 2000) (quoting Coleman, 501 U.S. at 732). When determining whether we may entertain a claim, we "apply a presumption against finding a state procedural bar and 'ask not what we think the state court actually might have intended but whether the state court plainly stated its intention.'" Galarza v. Keane, 252 F.3d 630, 637 (2d Cir. 2001) (quoting Jones v. Stinson, 229 F.3d 112, 118 (2d Cir. 2000)).

If the habeas court finds a procedural bar to consideration of a claim, the court may not address the claim unless the petitioner can satisfy one of two recognized exceptions. He must either show cause for the default and prejudice resulting from the alleged violation of federal law, or else demonstrate that a "fundamental miscarriage of justice" would result from a failure to consider the claim. Coleman, 501 U.S. at 750; see also Bousley v. United States, 523 U.S. 614, 622 (1998).

In this case we focus on the decision of the Appellate Division, which rejected petitioner's challenge to his plea and relied on the fact that Babi had not moved in the trial court to

20

withdraw his plea or vacate the judgment.[5] The panel's conclusion that the coerced-plea claim had not been preserved plainly satisfies the "adequacy" requirement for a procedural bar since it appears that the New York courts have long required such a motion in the trial court as a predicate to appellate review of a coerced-plea claim. See, e.g., People v. Claudio, 64 N.Y.2d 858, 858, 478 N.Y.S.2d 318, 319 (1985); People v. Pellegrino, 60 N.Y.2d 636, 637, 467 N.Y.S.2d 355, 355 (1983); People v. Pascale, 48 N.Y.2d 997, 997-98, 425 N.Y.S.2d 547, 547 (1980). The problem with respondent's procedural-bar argument is that the holding of the Appellate Division does not appear to rely solely on a principle of state law.

Having noted the failure of Babi to make the required motion at the trial-court level and the presumptive consequence that the claim was not preserved, the appellate court then proceeded to refer to an exception to the preservation rule, long recognized repeatedly by the New York Court of Appeals. As described by that court:

> In that rare case, however, where the defendant's recitation of the facts underlying the crime pleaded to clearly casts significant doubt upon the defendant's guilt or otherwise calls into question the voluntariness of the plea, we have held that the trial court has a duty

---

[5] The later 440.10 decision of the trial court followed what that court viewed as the reasoning and outcome of the Appellate Division's opinion.

21

to inquire further to insure that defendant's guilty plea
is knowing and voluntary.... Where the court fails in
this duty and accepts the plea without further inquiry,
the defendant may challenge the sufficiency of the
allocution on direct appeal notwithstanding that a formal
postallocution motion was not made.

Lopez, 71 N.Y.2d at 666, 529 N.Y.S.2d at 466-67 (citing, inter

alia, People v. Francis, 38 N.Y.2d 150, 153, 379 N.Y.S.2d 21, 24

(1975); People v. Beasley, 25 N.Y.2d 483, 487-88, 307 N.Y.S.2d 39,

43-44 (1969); People v. Serrano, 15 N.Y.2d 304, 309, 258 N.Y.S.2d

386, 389 (1965)); accord, e.g., Toxey, 86 N.Y.2d at 726, 631

N.Y.S.2d at 119. As applied, then, the appellate court must look to

whether    "defendant's    utterances    overall    ...    engender[ed]

'significant doubt' on the voluntariness of his plea." Toxey, 86

N.Y.2d at 725-26, 631 N.Y.S.2d at 119.

        That is precisely what the Appellate Division did on Babi's

appeal. Thus, after stating that "[s]ince defendant did not move to

withdraw his plea or vacate the judgement, his challenge to the

voluntariness of his plea is unpreserved," the court went on to

hold that "[t]he exception to the preservation requirement does not

apply since defendant's factual recitation did not negate an

essential element of the crime pleaded to, or cast significant

doubt upon his guilt, or otherwise call into question the

voluntariness of his plea." Babi, 7 A.D.3d at 468, 776 N.Y.S.2d at

807 (citing Toxey and Lopez). The panel then went on to explain

that conclusion. In doing so, it noted -- as to the absence of a "significant doubt [cast] upon his guilt" -- that he had "expressly acknowledged that he had the intent and capacity to complete the unconsummated drug sale." Id. The court then noted -- regarding the requirement of voluntariness -- that "[t]he record 'establishe[d] that the plea was knowing, intelligent and voluntary." Id. In this regard the court explicitly addressed the very question of voluntariness raised here by the petitioner. Thus the panel referred to the fact that Babi's plea agreement encompassed the dropping of charges against his mother and sister and that in his allocution he had mentioned their role in the crimes. Specifically, the court observed: "To the extent that defendant's plea was linked to the dismissal of charges against his relatives, the plea met constitutional standards for that type of arrangement...." Id. (citing People v. Fiumefreddo, 82 N.Y.2d 536, 605 N.Y.S.2d 671 (1993)).

This form of analysis reflects the interweaving of state law governing preservation and federal constitutional law governing the intelligent and voluntary entry of a guilty plea. The New York Court Appeals has held that the preservation exception, insofar as it allows a defendant to appeal without having moved to withdraw or vacate "merely reflects the general proposition that a guilty plea must be knowingly entered." Beasley, 25 N.Y.2d at 488, 307 N.Y.S.2d

23

at 43-44 (citing Machibroda v. United States, 368 U.S. 487, 493 (1962); Von Moltke v. Gilles, 332 U.S. 708, 724 (1948)).

The inquiry by New York state courts into whether a plea is knowing and voluntary is governed by federal constitutional law. See, e.g., People v. McDonald, 1 N.Y.3d 109, 113, 769 N.Y.S.2d 781, 783 (2003) (federal constitutional law governs determinations of the validity of a guilty plea); People v. Roulette, 55 A.D.3d 394, 395, 866 N.Y.S.2d 38, 39 (1st Dep't 2008) (citing Boykin v. Alabama, 395 U.S. 238, 242 (1969) (holding that the waiver of rights that occurs when a defendant enters a guilty plea implicates the Fifth Amendment privilege against compulsory self-incrimination, extended to the states by the Fourteenth Amendment, and the Sixth Amendment rights to a trial by jury and to confront witnesses against him)); People v. Elias, 161 A.D.2d 531, 531-32, 558 N.Y.S.2d 834, 834-35 (1st Dep't 1990) (citing Boykin, 395 U.S. at 242); People v. Thomas, 74 A.D.2d 317, 324, 428 N.Y.S.2d 20, 26 (2d Dep't 1980) (determining the voluntariness of wired pleas under federal constitutional law).

Federal law also guides determinations of voluntariness made by New York State courts for the purpose of establishing whether a defendant may be exempted from the preservation requirement and allowed to appeal a coerced-plea claim. Beasley, 25 N.Y.2d at 488,

24

307 N.Y.S.2d at 43-44. By citing to the United States Supreme Court's opinions in Machibroda and Von Moltke, the New York Court of Appeals indicated in Beasley that it intended to protect the federal constitutional right that pleas be knowing and voluntary and was doing so by waiving the state-law preservation requirements in appropriate circumstances. Id. (citing Machibroda, 368 U.S. at 493; Von Moltke, 332 U.S. at 724).

Because the Appellate Division's rejection of Babi's claim for lack of preservation was interwoven with a determination made under federal constitutional law that Babi's plea was voluntary, its ruling did not rest on an independent ground. E.g., Harris, 489 U.S. at 262. Accordingly, this claim is not procedurally barred, and we therefore must review the underlying determination of whether Babi's plea was voluntary.

## B.    Babi's Plea Was Voluntary

As we have observed, the state courts' rejection of petitioner's claim rested, in part, on an assessment of the merits of the claim. Accordingly, in evaluating Babi's claim, we must determine whether the state court holding was "contrary to, or [based on] an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United

25

States" or "was based on the unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. §§ 2254(d)(1), (2).

The Fifth Amendment privilege against compulsory self-incrimination, made applicable to the states by the Fourteenth Amendment, requires that the entry of a guilty plea "'represent[] a voluntary and intelligent choice among the alternative courses of action open to the defendant.'" Urena v. New York, 160 F. Supp.2d 606, 610 (S.D.N.Y. 2001) (quoting Ventura v. Meachum, 957 F.2d 1048, 1058 (2d Cir. 1992)); see, e.g., Boykin, 395 U.S. at 242-43. To be voluntary, a plea may not be the result of "actual or threatened physical harm, mental coercion overbearing the defendant's will, or the defendant's sheer inability to weigh his options rationally." Miller v. Angliker, 848 F.2d 1312, 1320 (2d Cir. 1988); see also United States v. Doe, 537 F.3d 204, 211 (2d Cir. 2008); United States v. Millan-Colon, 829 F. Supp. 620, 635 (S.D.N.Y. 1993), aff'd, 17 F.3d 14 (2d Cir. 1994); Heron v. New York, 1999 WL 1125059, at *5 (S.D.N.Y Dec. 8, 1999). Thus, a plea may not be induced by "threats (or promises to discontinue improper harassment), misrepresentation (including unfulfilled or unfulfillable promises), or perhaps by promises that are by their nature improper as having no proper relationship to the prosecutor's business." Doe, 537 F.3d at 211; see also Bousley, 523

26

U.S. at 619 (quoting Brady v. United States, 397 U.S. 742, 744 (1970)). The conclusion of the Appellate Division that Babi's plea was voluntary plainly was not inconsistent with, and did not unreasonably apply, Supreme Court precedent, nor did it rest on an unreasonable interpretation of the factual record.

The heart of petitioner's claim is based on the contention that his plea was effectively coerced by the prosecutor's decision to detain his ill mother and his sister in connection with the drug conspiracy. Babi could be heard to make three arguments -- (1) that conditioning the release of his close family members on his pleading guilty was inherently coercive, (2) that the prosecution engaged in misconduct by detaining his mother and sister for the explicit purpose of forcing him to plead, or (3) that his mother's ill health forced him to enter a plea that he would not otherwise have agreed to. None of these variants has any basis.

Petitioner cannot obtain habeas relief by the assertion that providing a benefit to someone else conditioned on the defendant pleading guilty is inherently coercive. The United States Supreme Court has never directly addressed the constitutionality of such pleas, often referred to as "wired pleas" or "package deals." See, e.g., Jimenez v. United States, 1998 WL 184339, at * 4 (S.D.N.Y. Apr. 2, 1998) (referring to such pleas as "wired"); Monroe v.

27

People of the State of New York, 567 F. Supp. 1168, 1170 (S.D.N.Y. 1983) (referring to such pleas as "package deals"). Indeed, the Court expressly declined to address the issue in Bordenkircher v. Hays, noting that it was not considering the "constitutional implications of a prosecutor's offer during plea bargaining of adverse or lenient treatment for some person other than the accused" when evaluating the voluntariness of a plea. 434 U.S. 357, 364 n.8 (1978) (emphasis added). The Court did hold, however, that prosecutors have wide latitude and are granted discretion when negotiating plea deals unless there is no "probable cause to believe the accused committed an offense defined by statute"; no specific condition or practice in plea negotiation is necessarily impermissible. Id. at 364. In the absence of Supreme Court authority prohibiting, or calling into serious question, such a plea deal, we cannot say that the rejection of Babi's position by the state courts -- insofar as it is premised on a theory of inherent coerciveness -- can be deemed contrary to or an unreasonable application of Supreme Court authority. See 28 U.S.C. § 2254(d)(1).

In any event, existing precedent compels the opposite conclusion about the validity of such a plea deal. Thus the Second Circuit has held that wired pleas are constitutionally permissible as long as the defendant enters into the plea deal intelligently

28

and voluntarily. See, e.g., United States v. Bennett, 252 F.3d 559, 563 n.6 (2d Cir. 2001) (citing United States v. Clements, 992 F.2d 417 (2d Cir. 1993) (considering a case where pleas offered to a group of co-defendants were conditioned on each one accepting)). A plea is not coerced just because it is "induced by a defendant's desire to benefit others." Id. Indeed, such wired pleas are permissible even if they involve co-defendants who are family members of the defendant. See United States v. Marquez, 909 F.2d 738, 740 (2d Cir. 1990).

As for petitioner's argument that the prosecution engaged in misconduct by deliberately targeting his mother and sister to coerce him, he offered the state courts no evidence to support that contention. Babi admitted -- and there is no contradiction to this admission -- that his mother and sister facilitated his overseas drug calls while he was in prison, and there certainly was an adequate basis for the prosecutor to investigate their role and charge them with criminal facilitation. There is also no meaningful evidence that the prosecutor used any form of coercion during his interactions with Babi and his defense counsel.[6] Indeed, the trial court made such a finding explicitly and persuasively on petitioner's section 440.10 motion, and that finding is

---

[6] The conclusory assertion of his trial attorney that the circumstances were coercive (see Maerov Decl., Ex. G, Giannini Aff. at 3), adds nothing to Babi's case.

29

presumptively binding on us. (July 10, 2006 Order at 5-6) ("The record provides no evidence that the prosecutor exercised coercion when negotiating the plea agreement with the defendant. On the contrary, the record indicated that the defendant and his attorney, confronted with overwhelming evidence by the prosecutor, concluded that it was in the defendant's best interest to accept a plea agreement.").[7]

It also bears emphasis, as the trial court noted, that the plea agreement offered discernable benefits to petitioner. He avoided a twenty-five-year-to-life sentence on the drug charge to which he pled, receiving instead a minimum term of seventeen and one-half years, and he also obtained an agreement that this sentence would be concurrent with the separate sentence imposed in the Queens Supreme Court on his murder-for-hire conspiracy conviction, thus saving him as much as twenty years on his

_____

[7]Even if Babi were being coerced by his family members to agree to a plea in order to assist his mother -- and he offered the state courts no evidence of this -- such coercion of a defendant by family members is "an insufficient basis to determine" that a plea is involuntary. United States v. Grzybek, 283 Fed. Appx. 843, 846 (2d Cir. 2008) (finding that where defendant presents no evidence other than bald assertion that family members were pressuring him, no coercion can be found); see, e.g., United States v. Pellerito, 878 F.2d 1535, 1541-42 (1st Cir. 1989) (same). In the case of family pressure, the court must still look to the voluntariness of the plea itself, and Babi offered the state courts no evidence of involuntariness. See, e.g., Mascia v. Zelker, 450 F.2d 166, 168-69 (2d Cir. 1971) (pressure resulting from mother's threat of suicide did not warrant habeas review); United States v. Rivera 1995 WL 564163, at *7 (S.D.N.Y. Sept. 22, 1995).

30

sentence.[8] (July 10, 2000 Order at 6).[9] Under these circumstances
the trial judge's finding that Babi "accepted the plea agreement
knowingly, voluntarily and in consideration of his own best
interest" (id. at 7), was a reasonable finding and not subject to
collateral attack.[10] In sum, petitioner bargained for certain
benefits, both for himself and for his family members, and received
those benefits. He cannot now be heard to disavow the commitment
that he made to obtain those benefits.[11]

---

[8] Justice Wetzel reasoned that Babi was able to reduce his
sentence on the narcotics charge by as much at seven and one-half
years, as the maximum sentence he could have received if he had
gone to trial was twenty-five years to life, and that because the
sentence was to run concurrently to the Queens conspiracy charge,
Babi's "total exposure to incarceration [was reduced] by twenty
years." (July 10, 2000 Order at 6).

[9] Criminal Sale of a Controlled Substance in the First-
Degree (N.Y. Penal Law § 220.43), a class A-I felony, carries a
minimum sentence of not less than fifteen years and not more than
twenty-five years to life. N.Y. Penal Law § 70.00(3)(a)(i).
Indeed, New York State courts have imposed sentences similar to
Babi's for the same charge. See, e.g., People v. Alzate, 84
N.Y.2d 983, 984, 646 N.Y.S.2d 499, 499 (1994) (sentencing
defendant to fifteen years to life for Criminal Sale of a
Controlled Substance in the First-Degree); People v. Prekuli, 256
A.D.2d 77, 77, 682 N.Y.S.2d 152, 152 (1st Dep't 1998) (sentencing
defendant to two concurrent terms of fifteen years to life for
two charges of Criminal Sale of a Controlled Substance in the
First-Degree).

[10] To the extent that the petitioner may be heard to
complain about the adequacy of the alloction at his plea, he
plainly misses the mark. The allocution met relevant
constitutional standards under Boykin, 395 U.S. at 242, and its
progeny.

[11] As for Babi's assertion that he is entitled to a coram
nobis hearing (Pet. Reply ¶ 36), the Constitution does not
entitle a defendant to an evidentiary hearing on a motion to
withdraw a guilty plea. Hines v. Miller, 318 F.3d 157, 162 (2d

31

Finally, we note that at the allocution Babi represented that he was entering his plea voluntarily and without coercion and that he had engaged in specific conduct that constituted the elements of the charged crime (New York County Plea Hr'g Tr. 5-13). These admissions are entitled to substantial weight when a defendant subsequently seeks to undermine his plea by collateral attack. See, e.g., Blackledge v. Allison, 431 U.S. 63, 73-74 (1977); Adames v. United States, 171 F.3d 728, 732 (2d Cir. 1999); Marcelin v. Garvin, 1999 WL 977221, at *7 (S.D.N.Y. Oct. 26, 1999). Babi offers no viable basis to overturn that plea.

## CONCLUSION

For the reasons stated, we recommend that the writ be denied and that Babi's petition be dismissed. As Babi has failed to make a substantial showing of the denial of a constitutional right, we also recommend that a certificate of appealability not be issued. 28 U.S.C. § 2253(c).

---

Cir. 2003); see also Diaz v. Greiner, 110 F. Supp.2d 225, 235 (S.D.N.Y. 2000) ("[f]ederal habeas relief is not available to redress alleged procedural errors in state post-conviction proceedings."). The Second Circuit guides us in determining the "proper analytical approach to deciding whether state criminal procedural rules violate due process[, which] is to determine if they offend some principle of justice so rooted in the traditions and conscience of our people as to be ranked fundamental." Hines, 318 F.3d at 162. "[T]he failure to hold an evidentiary hearing ... does not offend a deeply rooted or 'fundamental' principle of justice." Id.

32

Pursuant to Rule 72 of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from this date to file written objections to this Report and Recommendation. Such objections shall be filed with the Clerk of the Court and served on all adversaries, with extra copies to be delivered to the chambers of the Honorable Colleen McMahon, Room 640, and to the chambers of the undersigned, Room 1670, 500 Pearl Street, New York, New York 10007. Failure to file timely objections may constitute a waiver of those objections both in the District Court and on later appeal to the United States Court of Appeals. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e); Thomas v. Arn, 470 U.S. 140, 150-52 (1985); DeLeon v. Strack, 234 F.3d 84, 86 (2d Cir. 2000) (citing Small v. Sec'y of Health and Human Servs., 892 F.2d 15, 16 (2d Cir. 1989)).

Dated: New York, New York
       April 8, 2009

MICHAEL H. DOLINGER
UNITED STATES MAGISTRATE JUDGE

33

Copies of the foregoing Report and Recommendation have been mailed today to:

Mr. Petros Babi
#00-A-2646
Great Meadow Correctional Facility
Comstock, NY 12821-0051


Michelle Maerov, Esq.
Laura Stockmeyer, Esq.
Assistant Attorneys General for the State of New York
120 Broadway
New York, NY 10271-0332